UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CHARLENE CHELI, an Individual | : |
| Plaintiff, | : |
| vs. | : Case No. 1:23-cv-3115 |
| VISION PROPERTIES, BLUEBERRY CROSSING, L.L.C., | : |
| a New Jersey Limited Liability Company, | : **COMPLAINT** |
| Defendant. | : |

## Introduction

Plaintiff, CHARLENE CHELI, an individual, ("Plaintiff") on her own behalf and on behalf of all other mobility impaired individuals similarly situated hereby sues the Defendant, VISION PROPERTIES, BLUEBERRY CROSSING, L.L.C., a New Jersey Limited Liability Company, ("Defendant") for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD").

## The Parties

1. Plaintiff, CHARLENE CHELI, is an individual over eighteen years of age and is otherwise sui juris.

2. Defendant, VISION PROPERTIES, BLUEBERRY CROSSING, L.L.C., a New Jersey Limited Liability Company, owns or operates a place of public accommodation; in this instance a shopping center/plaza which is alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

1

## Jurisdiction and Venue

3. Defendant's place of public accommodation is a shopping center/plaza, known as Blueberry Crossing, located at 240 S. White Horse Pike, Hammonton, New Jersey 08037, Atlantic County (the "Property").

4. Venue is properly located in the District of New Jersey, Camden Vicinage because venue lies in the judicial district of the property situs. The Property is located in and does business within this judicial district.

5. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

6. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

7. The Defendant either owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendant is thus required to comply with the obligations of the ADA[2].

8. Plaintiff, CHARLENE CHELI, is an individual with disabilities – as defined by and pursuant to the ADA. Ms. Cheli has been diagnosed with facioscapulohumeral muscular dystrophy and therefore has a physical impairment that substantially limits many of her major life activities[3] including, but not limited to, not being able to walk, stand, reach, or lift. Ms. Cheli requires the use of a wheelchair to ambulate.

---

[1] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[2] 28 CFR § 36.201(a) and 28 CFR § 36.104
[3] as defined by 28 CFR § 36.105(b)(1-2)

**Factual Context**

9. Ms. Cheli is a staunch advocate of the ADA. Since becoming disabled (and having to fully rely on the use of her wheelchair to ambulate) she has dedicated her life to ensuring that she, and others like her, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers.

10. Ms. Cheli is deeply affected by the architectural barriers which she encounters at many of the public places that she visits. Seemingly trivial architectural features such as parking spaces, curb ramps, handrails, and doorways are taken for granted by the non-disabled but, when improper, are cumbersome, arduous, and even dangerous for her. These conditions are belittling; they make her angry and upset and only strengthen her belief that society views the disabled not as people but merely as an inconvenience.

11. The barriers to access that Ms. Cheli experiences at differing places of public accommodation are extremely similar in nature; she is often faced with improperly designed accessible parking spaces, cracked and damaged asphalt, excessive sloping on ramps, and restroom that are not equipped for wheelchair users. For this reason, the actions filed on her behalf are often very similar in structure, list very similar ADA violations, and seek similar remediations.

12. Ms. Cheli is exceedingly frustrated and disheartened by the repetitiveness of the complaints she has been forced to make to both employees and management – to no avail. Those complaints, along with letters and emails, have done nothing to stem the ongoing discrimination faced by those like her; only the filing of actions such as this will spur the change necessary to obtain equal rights.

13. Ms. Cheli has resided within southern New Jersey; in Buena Vista, Hammonton, and Vineland for the entirety of her life. Ms. Cheli was born in Buena Vista Township, lived in Hammonton, and currently resides in Vineland. She was a teacher in the Vineland school district

for over thirty years. Further, she accumulated a mass of friends and family in the region; whom she now visits regularly – especially since retiring due to her disabilities.

14. Ms. Cheli has visited the Property numerous times over the years and her last visit took place on or about May 15, 2023.

15. Ms. Cheli has visited the Property not only as a bone fide purchaser; availing herself of the goods and services offered to the public within, but also to investigate, as a tester, the status of the violations that she has encountered on previous visits.

16. Ms. Cheli fully intends to return to the Property in the very near future and in an ongoing nature into the future. Due to the nature of the Property itself, its proximity to her home, her past patronage, and her frequency of nearby and continuous travel – a date certain for return is not required. The Property is located roughly 17 miles from Ms. Cheli's home and is situated on Route 30 (the White Horse Pike) very near to Route 54 – both heavily travelled southern New Jersey roadways. Ms. Cheli visits this property concurrent to her visits in Hammonton (to visit with friends and family and to shop – particularly at Goodwill and Buy Rite Liquors) and her travels both north and east of her home. Ms. Cheli fully intends to revisit the Property as a bone fide purchaser and as a tester to monitor any progress made with to respect to future ADA compliance.

17. Ms. Cheli has personally encountered repeated exposure to architectural barriers at the Property and those harmful conditions have endangered her safety and caused her great distress.

18. The ADA has been law for over thirty (30) years and the Property remains non-compliant. Thus, the Plaintiff has reasonable grounds to believe that she will continue to be subjected to discrimination by the Defendant at its place of public accommodation.

19. Ms. Cheli has a realistic, credible, existing, and continuing threat of discrimination from the Defendant through its non-compliance with the ADA at the Property as described but not

necessarily limited to the barriers she has personally experienced which are listed in paragraph 24 of this complaint.

20. Following any resolution of this matter Ms. Cheli will ensure that the Property undertakes the remedial work that is required under the appropriate standard and is compliant with the ADA. This reinspection will occur as set forth in any agreement contemplated by the parties or as ordered by this Court.

**COUNT I**

**Violation of Title III of the
Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.**

21. Plaintiff realleges and incorporates, by reference, all of the allegations contained in all of the preceding paragraphs.

22. The Defendant has discriminated against Ms. Cheli, and others similarly situated, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

23. A preliminary inspection of the Property has shown that violations of the ADA exist. That inspection, performed by Plaintiff's expert, further revealed that the remediation of all violations/barriers listed in paragraph 24 are both technically feasible and readily achievable in nature. Plaintiff's expert has based this judgement on personal knowledge of materials, pricing, labor, and the completion of similar projects in the southern New Jersey/Atlantic County area.

24. The following are architectural barriers and violations of the ADA that Ms. Cheli has personally encountered during her visits to the Property:

**Accessible Parking Area, Exterior Accessible Route, Entrance Access & Paths of Travel**

   a. The accessible parking spaces located at Blueberry Crossing are not maintained, contain

faded striping and deep surface cracks, contain sloping beyond allowable limits, and lead to non-compliant curb ramps; violations of the ADAAG and Sections 402 and 502 of the 2010 ADA Standards. Due to the foregoing Ms. Cheli could not safely unload in the designated accessible parking areas; she has instead been parked away from the shopping center in order to avoid obstacles and to ensure that she could safely unload from her van and then freely access it once returning. The accessible parking area should be leveled, resurfaced, and restriped. The remediation of this barrier is both technically feasible and readily achievable.

b. The exterior accessible routes leading from the accessible parking area to the Blueberry Crossing tenant space entrances contains excessive sloping and cross-sloping and abrupt changes in level; violations of the ADAAG and Sections 402, 406, and 502 of the 2010 ADA Standards. Ms. Cheli must traverse either around or through excessive sloping and abrupt changes of level – these conditions have presented her with a tipping hazard and could cause damage to the bottom of her wheelchair. The accessible routes should be leveled and resurfaced. The remediation of this barrier is both technically feasible and readily achievable.

c. The Property fails to provide the requisite number of compliant accessible parking spaces (and access aisles) and van accessible parking spaces (and access aisles), in violation of ADAAG and Section 502 of the 2010 ADA Standards. The lack of accessible parking has forced Ms. Cheli to park away from the shopping center – in open areas – as detailed above. These barriers have forced her to travel across the parking lot, through vehicular traffic, to reach the facility and has caused her frustration, anxiety, and distress. Once the current accessible parking areas have been remediated Blueberry Crossing will contain the

requisite number of accessible parking areas. The remediation of this barrier is both technically feasible and readily achievable.

d. The Property fails to provide a compliant route to the adjacent street, sidewalk, and/or bus stop – the current route contains excessive sloping and abrupt changes in level. Ms. Cheli is precluded from accessing the Property from these areas due to the lack of an accessible route; a discriminatory omission which limits her options for transportation; a violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards. The route from the street/sidewalk should be leveled and resurfaced. The remediation of this barrier is both technically feasible and readily achievable.

e. The Property fails to provide a continuous accessible route throughout the shopping center – such is required for those in wheelchairs to travel from tenant space to tenant space across a shopping center/plaza without having to go through the trouble of returning to one's vehicle, moving said vehicle to another portion of the Property, parking in a different accessible parking space, and then disembarking the vehicle and then traveling to the next tenant space; all of that travel to simply visit a different store in the same shopping center. The lack of a continuous accessible route is a violation of the ADAAG and Section 402 of the 2010 ADA Standards. Ms. Cheli has been impeded along the exterior routes by abrupt changes of level, gaps in the path of travel, and excessive sloping when she has attempted to travel from store to store at Blueberry Crossing.

**Access to Goods and Services**

f. Payment counters throughout Blueberry Crossing are mounted outside of acceptable reach ranges and beyond Ms. Cheli's reach; a violation of the ADAAG and Sections 308 and 904 of the 2010 ADA Standards. The remediation of this barrier is both technically feasible and

readily achievable.

g. Blueberry Crossing tenant spaces (Mario's Pizza, Hoy Yueng Restaurant, and Sass Kitchen) fail to provide the requisite number of accessible dining tables; a violation of ADAAG and Sections 902 of the 2010 ADA Standards. Due to the lack of accessible dining tables Ms. Cheli could not dine in a comfortable manner. The remediation of this barrier is both technically feasible and readily achievable.

h. When attempting to enter the tenant spaces at Blueberry Crossing Ms. Cheli has been impeded by sloping and abrupt changes of level at the base of the door; a violation of ADAAG and Section 404 of the 2010 ADA Standards. Ms. Cheli could not enter tenant spaces without assistance; these barriers present her with a tipping hazard and could cause damage to the bottom of her wheelchair. Entrances to tenant spaces should be properly beveled so as not to damage the bottom of wheelchairs – this is imperative due to the presence of the locking mechanism on the bottom of Ms. Cheli's wheelchair which keeps her in place while driving her van. The remediation of this barrier is both technically feasible and readily achievable.

**<u>Restrooms</u>**

i. The restrooms within Blueberry Crossing tenant spaces (Mario's Pizza, Hoy Yueng Restaurant, Sass Kitchen, Majestic Nail, and Salon Beverle) are not ADA compliant and are unsafe for use by Ms. Cheli. The barriers to access within these restrooms include inaccessible water closets which lack proper controls, incorrect signage, and a lack of wheelchair maneuvering space; violations of ADAAG and Section 601 of the 2010 ADA Standards. Ms. Cheli could not access the restrooms either at all or without assistance. The remediation of these barrier is both technically feasible and readily achievable.

j. The aforementioned restrooms provide toilet tissue, soap, and paper towel dispensers which are mounted improperly beyond Ms. Cheli's reach; in violation of ADAAG and Section 308 of the 2010 ADA Standards. Ms. Cheli could not make use of the dispensers due to their improper location – if forced to attempt to reach beyond her capacity she could fall from her wheelchair and injure herself. The remediation of this barrier is both technically feasible and readily achievable.

k. The lavatories within the aforementioned restrooms lack the requisite knee clearance and toe clearance; a violation of ADAAG and Section 606 of the 2010 ADA Standards. Ms. Cheli could not freely access the lavatories to wash her hands due to the lack of wheelchair clearance and maneuvering space; she could neither approach nor reach the sink. The remediation of this barrier is both technically feasible and readily achievable.

l. The aforementioned restrooms contain improper centerlines for the water closets; in violation of ADAAG and Section 604 of the 2010 ADA Standards. The presence of improper centerlines on toilets affects the toilet's location relative to the grab bars and limits the maneuvering space which impedes her ability to transfer to and from her wheelchair and the toilet; these conditions make the toilet areas unsafe for and unusable by Ms. Cheli. The remediation of this barrier is both technically feasible and readily achievable.

m. The use of doors at the aforementioned restrooms is impeded by improper signage and a lack of maneuvering clearance; in violation of ADAAG and Section 404 of the 2010 ADA Standards. Ms. Cheli could not freely access the restrooms doors due to the presence of stored goods, improper signage, and inadequate maneuvering clearance. The remediation of this barrier is both technically feasible and readily achievable.

25. Each of the foregoing is also a violation of the ADA Standards, originally published on

July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D; and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[4]

26. The discriminatory violations described in paragraph 24 may not be an exhaustive list of the ADA violations that exist at the Property but are the result of a preliminary inspection conducted by the Plaintiff and include all those knowingly experienced by Ms. Cheli. Plaintiff requires thorough inspection of the Defendant's place of public accommodation in order to photograph and measure the architectural barriers that exist, in violation of the ADA.

27. Ms. Cheli, and all others similarly situated, will continue to suffer discrimination, injury and damage without the immediate relief provided by the ADA and requested herein.

28. Defendant has discriminated against Ms. Cheli, and all those similarly situated, by denying her access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

29. Defendant continues to discriminate against Ms. Cheli, and all those similarly situated, by failing to remove architectural barriers; and the communication barriers that are structural in nature.[5]

---

[4] 28 CFR § 36.104
[5] 42 U.S.C. § 12181(b)(2)(A)(iv)

30. Defendant continues to discriminate against Ms. Cheli, and all those similarly situated, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[6]

31. Defendant continues to discriminate against Ms. Cheli, and all those similarly situated, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[7]

32. If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[8] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

33. Pursuant to 28 CFR § 36.304(a)(1) "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property area readily accessible to and usable by individuals with disabilities, including individuals, like Ms. Cheli, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[9]

34. Pursuant to 28 CFR § 36.304(a) Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

---

[6] 42 U.S.C. § 12181(b)(2)(A)(ii)
[7] 42 U.S.C. § 12181(b)(2)(A)(iii)
[8] as defined by 28 CFR § 36.401(a)(2)
[9] 28 CFR § 36.402(a)(2)

35. 28 CFR § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element at the Property must comply with or be modified to meet. Those are defined as follows:

   a. Elements that have not been altered since on or after March 15, 2012 must comply with the 1991 Standards.

   b. Elements that have existed prior to and have not been altered since on or after March 15, 2012 that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with either the 1991 Standards or the 2010 Standards.

   c. Elements that have been altered on or after March 15, 2012 that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with the 2010 Standards.

36. Plaintiff is not required to notify Defendant of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Ms. Cheli has found that voicing her concerns to employees and management, making phone calls, and writing letters is futile. In her experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

37. Ms. Cheli is without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiff and the Defendant, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

38. Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiff is entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

39. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Ms.

Cheli injunctive relief, including an order to require the Defendant to alter the Property and make such readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendant cures their violations of the ADA.[10]

**WHEREFORE,** Plaintiff respectfully demands;

a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b. Injunctive relief against the Defendant including an order to (1) cure all ADA violations existing at the Property listed herein and those later found through discovery within the next six months; (2) to make the Property accessible to and usable by individuals with disabilities; and (3) to require the Defendant to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property – as required by the ADA.

d. An award of attorney's fees, costs, and litigation expenses pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

## COUNT II
**Violation of New Jersey Law**

---

[10] 42 U.S.C. § 12188(b)(2)

## Against Discrimination, N.J.S.A. 10:5-1 et seq.

40. Plaintiff realleges and incorporates, by reference, all of the allegations contained in all of the preceding paragraphs.

41. The Property is a place of public accommodation as defined by N.J.S.A 10:5-5, (LAD).

42. New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability. This opportunity is recognized and declared to be a civil right.[11]

43. As set forth above, the Defendant has violated the LAD by denying Ms. Cheli, and all other disabled individuals, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

44. As a result of the Defendant's discrimination, through repeated exposure to architectural barriers and other harmful conditions, Ms. Cheli has sustained bodily injury in the form of emotional distress, mental anguish, suffering and humiliation, in violation of the LAD.

**WHEREFORE**, Plaintiff respectfully demands;

a. That this Court assume jurisdiction.

b. The Court issue a Declaratory Judgment determining that the Defendant is in violation of the LAD.

c. An injunction ordering Defendant to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.

d. A monetary award consisting of the individual Plaintiff's damages – to the maximum

---

[11] Pursuant to N.J.S.A 10:5-4

  extent permitted – attorney's fees, and litigation expenses; including expert's fees and costs.

e. An order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property – as required by the LAD.

f. Other relief that this Court deems just and proper and is allowable under the LAD.

Respectfully submitted this 6th day of June 2023,

                */s/ Jon. G. Shadinger Jr.*
                Jon G. Shadinger Jr., Esq.
                Shadinger Law, LLC
                717 E. Elmer St., Suite 7
                Vineland, NJ 08360
                Direct (609) 319-5399
                Office (609) 691-8565
                Fax (609) 262-4651
                js@shadingerlaw.com